ORDERED in the Southern District of Florida on August 2, 2007.



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

LORRAINE BROOKE ASSOCIATES,　　　　　Case No. 07-12641-BKC-AJC
INC.,　　　　　　　　　　　　　　　　　　　Chapter 7

　　　　　Debtor.
_____/

### ORDER GRANTING MOTION OF DREW DILLWORTH, THE CHAPTER 7 TRUSTEE (I) TO APPROVE SETTLEMENT BETWEEN TRUSTEE DILLWORTH AND FREDRIC GOLDMAN AND (II) TO SHORTEN NOTICE PERIOD FOR APPROVAL OF SETTLEMENT

This matter came before the Court for hearing on July 30, 2007 at 3:00 p.m. on (a) the Motion of Drew Dillworth, Chapter 7 Trustee (the "Trustee") (I) to Approve Settlement Between Trustee Dillworth and Fredric Goldman and (II) To Shorten Notice Period for Approval of Settlement (C.P.# 149) (the "Original Motion"), and (b) the Trustee's Supplement to the Settlement Motion (C.P.#169)(the "Supplement")(the Original Motion and the Supplement are hereinafter referred to as the "Motion"). Pursuant to the Motion, the Trustee seeks approval of a

settlement and compromise pursuant to Bankruptcy Rule 9019 and sections 363 and 365 of the Bankruptcy Code between the Trustee, on behalf of the Debtor's estate, and Fredric Goldman in accordance with the terms of that certain Settlement Agreement, dated July 2, 2007, a copy of which is attached to the Motion, as amended by the certain First Amendment to Settlement Agreement, dated July 30, 2007, a copy of which is attached hereto (the "First Amendment") (collectively, the "Settlement Agreement").[1]

The Court conducted a hearing on the Original Motion on July 11, 2007 (the "Initial Hearing"). At the Initial Hearing, the Court considered the Original Motion and, pursuant to an order of the Court, dated July 12, 2007 (C.P.# 165), continued the hearing on the Original Motion to July 30, 2007, shortened the bar date for filing proof of claims in this case to July 23, 2007 (the "Bar Date") and ordered that any party objecting to the Original Motion or any supplement thereto file an objection on or before July 26, 2007 and show cause at the hearing on July 30, 2007 why the Original Motion, as it may be supplemented, should not be approved.

On July 10, 2007, an Objection to the Original Motion was filed by Louis Brown, as the executor and personal representative of the Estate of Nicole Brown Simpson (C.P. #164)(the "Brown Objection"). On July 11, 2007, the Trustee filed his Response to the Brown Objection (C.P.# 163)(the "Trustee Response"). Also, on July 11, 2007, Fredric Goldman ("Goldman") filed his response to the Brown Objection (C.P.# 161) (the "Goldman Response"). No further objections to the Motion were filed.

The Court, upon reviewing and considering the Original Motion, the Supplement, the Brown Objection, the Trustee Response and the Goldman Response, upon hearing argument of counsel, having been advised of the First Amendment, upon hearing from the Trustee as to his

---

[1] Unless otherwise defined herein, all capitalized terms used herein shall have the meanings set forth in the Settlement Agreement.

recommendations and business judgment, upon the review of the claims filed in this case as of the Bar Date, upon review of the entire record in this case, and otherwise being fully advised in the premises, makes the following findings of fact and conclusions of law:

### Findings of Fact and Conclusions of Law.

A.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.  Proper, timely, adequate and sufficient notice of the Motion and hearings on the Motion has been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007 and 9014, the local rules of this Court and the procedural due process requirements of the United States Constitution. No other or further notice of the Motion, the hearings thereon or of the entry of this Order is necessary.

D.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons, creditors and entities, including, without limitation: (i) all entities who claim any interest in or lien upon the Book Rights, as hereinafter defined; (ii) the non-debtor party to the HC Contract, as hereinafter defined, assumed and assigned pursuant to this Order; (iii) all parties who filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (iv) all creditors of the Debtor; and (vi) the Office of the United States Trustee ("UST").

3

E.      The Court finds that the Debtor and Debtor's bankruptcy estate owns and has good title to, among other things, (i) that certain publishing contract, dated May 8, 2006, between HarperCollins Publishers, Inc. and the Debtor (the "HC Contract") and all rights thereunder including the right of reversion, (ii) all rights to the book entitled "If I Did It" (the "Book"), (iii) the rights granted and transferred to the Debtor by Orenthal James Simpson ("Simpson") under and related to that certain License Agreement, dated April 11, 2006 from Simpson to the Debtor (the "License Agreement"), including specifically Simpson's intellectual property rights, consisting among other things, of Simpson's name, facsimile signature, nickname, likeness, life story, right of publicity and auto biographical sketch on or in connection with the writing and publishing of the Book and the right to use such intellectual property in connection with the Book ("Simpson's Intellectual Property"), and (iv) all rights and proceeds related to and from the HC Contract, the Book and the License Agreement, including without limitation, (a) the copyright, (b) media rights, (c) movie rights, (d) contents, and (e) all ancillary rights related and incident thereto (collectively, the "Related Rights"). For purposes of this Order, the HC Contract, the Book, the License Agreement and the Related Rights shall be collectively referred to herein as the "Book Rights".

F.      The Court is thoroughly familiar with the facts of this case, including specifically the secured claim filed by Goldman against the Debtor's estate in the amount of $38,250,060.90 (the "Goldman Claim") and the underlying basis for the asserted secured claim by Goldman in the Book Rights. The Court has considered the Brown Objection, the cases, statutes and pleadings referenced by counsel to Brown at the hearing and the argument of counsel to Brown at the hearing in connection with potential objections to and litigation over the secured nature of the Goldman Claim, including, without limitation, the allegation that such secured claim can be

4

avoided as a preference under section 547 of the Bankruptcy Code. The Court has also considered the various defenses that could be asserted by Goldman in respect of such litigation and has considered the expense and delay associated with any such litigation, the effect of such delay on the Book Rights and the Trustee's business judgment to settle such issues through the settlement and compromise contained in the Settlement Agreement. The Court is not persuaded by the sole objecting party who presented no evidence or persuasive argument as to why the sale should not take place, but rather focused on delaying proceedings until the other matters were resolved. The sole objecting party did not present any offer to purchase the Book Rights nor did anyone else for that matter. Accordingly, the Court finds that any such litigation with Goldman over the secured nature of the Goldman Claim (i) will be expensive to litigate, including through appeals, (ii) will cause a significant delay in the Trustee's ability to monetize the Book Rights, and (iii) is subject to substantial risk that the Trustee may lose such litigation, thereby causing the Debtor's estate to lose the opportunity to share in the value of its potentially most valuable asset.

G. The Court also considered the paramount interest of creditors in this case. First, no creditor other than Brown filed an objection to the Settlement Agreement. Second, Pablo Fenjves, who is the ghostwriter of the Book and filed a secured claim against the Book, appeared through counsel at the hearing and affirmatively supported the Settlement Agreement.

H. The Court also finds that the consideration proposed to be paid under the Settlement Agreement by Goldman, or an entity owned and controlled by Goldman, including Ron Goldman, LLC (the "Purchaser"), for the Book Rights is fair, is in the best interest of the Debtor's estate and constitutes full and adequate consideration and reasonably equivalent value for the Book Rights. In connection therewith, the Court finds that Goldman, through his actions,

has demonstrated that he is the person most willing and incentivized to maximize the value of the Book Rights, which in turn provides a direct benefit to the Debtor's estate through the terms of the Settlement Agreement. The Court has heard and accepts the representation of Goldman at the hearing that he will use his best efforts to maximize the value of the Book Rights. The Court also notes that no other offers were submitted to purchase the Book Rights from the objecting party or anyone else.

I. In reaching the findings and conclusions herein and having heard and considered the Trustee's analysis of the Settlement Agreement, the probability of success on litigation claims involving the secured nature of the Goldman Claim and the present financial condition of Debtor's estate, the Court has considered and balanced (i) the probability of success on the merits of the potential litigation claims against the Goldman Claim, (ii) the difficulties to be encountered in the collection on any such litigation claims, (iii) the complexity of such litigation and the expense, inconvenience and delay associated with such litigation, and (iv) the paramount interests of creditors. See In re Justice Oaks II, Ltd., 898 F.2nd 1544, 1549 (11th Cir. 1990). The Court has also given a proper deference to the reasonable views of creditors in this chapter 7 case. See Id.

J. The Court also gives proper weight to (i) the Trustee's informed judgment as to the Settlement Agreement. See In re Carla Leather, Inc., 44 Bankr. 457, 11 Collier Bankr. Cas. 2d (MB) 622 (Bkrtcy.S.D.N.Y. 1984), aff'd, In re Carla Leather, Inc., 50 Bankr. 764, 13 Bankr. Ct. Dec. (CRR) 650 , CCH Bktcy.L.Rptr. para. 70,640 (S.D.N.Y. 1985), and (ii) the competency and experience of Trustee's counsel in supporting the Settlement Agreement. See In re Texaco, Inc., 84 Bankr. 893, 17 Bankr. Ct. Dec. (CRR) 483, CCH Bktcy.L.Rptr. para. 72,235 (Bkrtcy.S.D.N.Y. 1988).

K.  The settlement and compromise contained in the Settlement Agreement is fair and equitable and is in the best interest of the Debtor's estate. See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 20 L. Ed. 2d 1, 88 S. Ct. 1157 (1968).

L.  The settlement and compromise contained in the Settlement Agreement clearly falls well above the lowest point in the range of reasonableness. See In re Arrow Air, Inc., 85 B.R. 886 (Bankr. S.D. Fla. 1988); In re Martin, 91 F.3d 389 (3rd Cir. 1996).

M.  Neither Goldman nor the Purchaser is an insider, as that term is defined in section 101(31) of the Bankruptcy Code and the decisions thereunder. Goldman and the Purchaser are purchasers in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and are entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code with respect to the Book Rights. The Settlement Agreement was negotiated and entered into in good faith, based upon arm's length bargaining and without collusion. Neither the Trustee nor Goldman nor the Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of section 363(n) to the Settlement Agreement. Therefore, the sale of the Book Rights has been proposed in good faith. See In re After Six, Inc., 154 B.R. 876, 883 (Bankr. E.D. Pa. 1993); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149 (3d Cir. 1986).

N.  The Court finds that the sale of the Book Rights and the assumption and assignment of the HC Contract to the Purchaser under the Settlement Agreement is within the "sound business judgment" of the Trustee pursuant to Section 363(b) and 365 of the Bankruptcy Code. In re Ionosphere Clubs, Inc., 184 B.R. 648, 653 (S.D.N.Y. 1995); In re Delaware & Hudson Railway Co., 124 B.R. 169, 175-176 (D. Del. 1991); In re Titusville Country Club, 128

7

B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re Country Club Estates at Aventura Maintenance Association, Inc., 227 B.R. 565, 568 (Bankr. S.D. Fla. 1998).

O.  The sale of the Book Rights to the Purchaser satisfies the conditions of Section 363(f)(2) of the Bankruptcy Code as the only other person who has asserted a lien or security interest in the Book Rights, namely Pablo Fenjves, supports the Settlement Agreement.

P.  The Trustee, on behalf of the Debtor's estate, has the full corporate power and authority to execute the Settlement Agreement and all other documents contemplated thereby and to consummate the sale of the Book Rights to the Purchaser. No consents or approvals are required to consummate such transactions.

Q.  The Trustee and Purchaser have, to the extent necessary, satisfied the requirements of Bankruptcy Code section 365, including sections 365(b)(1) and 365(f)(2), in connection with the sale and the assumption and assignment of the HC Contract.

R.  In the absence of a stay pending appeal, Goldman and the Purchaser will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Settlement Agreement at any time on or after entry of this Order and cause has been shown as to why this order should not be subject to the stay provided by Fed R. Bankr. P. 6004(g) and 6006(d).

S.  The Court finds and concludes that there is a broad public policy in favor of settling litigation matters. See In re Munford, 97 F.3d 449 (11th Cir. 1996).

**THEREFORE, BASED UPON THE FOREGOING**, the Court **ORDERS AND ADJUDGES** as follows:

1. The Motion is granted in its entirety.

2. The Brown Objection is overruled.

3. The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§157 (b)(1) and 1334(b). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

5. The Settlement Agreement, and each of the terms and conditions therein, is approved in full.

6. The Trustee shall be, and is, authorized, empowered and directed, pursuant to sections 105 and 363(b) of the Bankruptcy Code, to sell the Book Rights to the Purchaser pursuant to the Settlement Agreement. The Trustee shall be, and is, authorized, empowered and directed, pursuant to section 365 of the Bankruptcy Code, to assume and assign the HC Contract to the Purchaser pursuant to the Settlement Agreement. Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Book Rights and the assumption and assignment of the HC Contract pursuant to the Settlement Agreement and this Order shall be free and clear of any and all liens, claims, encumbrances, interests and other liabilities, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Liens and Interests").

7. The sale of the Book Rights to the Purchaser shall constitute a legal, valid and effective transfer of the Book Rights notwithstanding any requirement for approval or consent by any person, including without limitation, Simpson, and shall vest Purchaser with all right, title

9

and interest in and to the Book Rights, free and clear of all Liens and Interests. Specifically, the right, title and interest in the Book Rights being irrevocably and in perpetuity sold and transferred to the Purchaser hereunder by the Trustee includes, without limitation, (a) the right to all intellectual property contained therein, including Simpson's Intellectual Property, the story, the plot line, verbiage, theme, content, copyright, language, pictures, diagrams and other materials contained therein, (b) the right to transfer, sell, convey, assign, distribute, encumber, mortgage, hand over, alienate or dispose of the Book Rights, or any portion thereof, (c) the right to copyright and any renewals thereof, (d) the right to engage in any act of licensing or sublicensing, whether exclusively or non-exclusively, involving or related to the Book Rights, or any portion thereof, (e) any and all rights to exploit, sell, merchandise, serialize, publish, transfer, distribute, change, alter (including changing the title) or otherwise take advantage thereof or dispose of the Book Rights, or any portion thereof, (f) the right to make a movie, video, audio tape, theatrical presentation, live presentation, television show, cable show, webpage, doll, figurine or any other physical object, documentary, digital or electronic presentation in respect of the Book Rights or any portion thereof, (g) the right to distribute, produce, manufacture, present, electronically store or digitize the Book Rights or any portion thereof or to make them available on the internet or other electronic medium, (h) the right to publically display, publish, disseminate, store copies of the Book Rights on any electronic or other digital medium, make such copies available to the public in any electronic or digital form or medium, hold or retain such copies in any digital, electronic or web based format, or copy, replicate, release or transmit the Book Rights, and (i) to receive any and all profits and proceeds from the Book Rights or any of the activities described herein, subject to the rights of the Debtor's estate to be paid under the Settlement Agreement.

8.      The exploitation of the Book Rights as described and contemplated herein by the Purchaser shall not require the consent, approval, acquiescence, permission or authority of Simpson or the Debtor, or any of the Debtor's officers, directors, shareholders, agents, employees, licensor, successors or assigns or any person on its behalf the Debtor.

9.      All persons or entities, presently or on or after the Closing Date with access to or in possession or control of some or all of the Book Rights, or any assets related thereto, are directed to provide access to and surrender possession of the such assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

10.     The sale of the Book Rights to Purchaser under the Settlement Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and all applicable law.

11.     Purchaser is granted and is entitled to the protections provided to a good faith Purchaser under section 363(m) of the Bankruptcy Code in respect of the purchase of the Book Rights, including with respect to any assignment of the HC Contracts as part of the sale of the Book Rights pursuant to section 365 of the Bankruptcy Code and this Order.

12.     The Purchaser has satisfied all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code with respect to the HC Contract. The Court concludes that no defaults exist on the part of the Debtor under the HC Contract and therefore there are no cure costs required in connection with the assumption and assignment of the HC Contract. The assumption by the Trustee of the HC Contract and the assignment of the HC Contract to the Purchaser, as provided for or contemplated by the Settlement Agreement, be, and is, authorized and approved, and the HC Contract shall be in full force and effect and assumed by the Trustee and assigned and sold to the Purchaser pursuant to sections 363 and 365 of the Bankruptcy Code.

The HC Contract shall be transferred and assigned to, and shall remain valid and binding and in full force and effect for the benefit of, the Purchaser in accordance with its terms. Any and all provisions in the HC Contract that prohibit or condition the assignment of the HC Contract or allow the party to the HC Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of the HC Contract constitute unenforceable anti-assignment provisions which are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Trustee and assignment to the Purchaser of the HC Contract have been satisfied and the Purchaser shall be fully and irrevocably vested in all right, title and interest of the HC Contract. Upon assignment of the HC Contract to the Purchaser, no default shall exist under the HC Contract and no non-Debtor party to the HC Contract shall be permitted to declare a default by the Purchaser thereunder or otherwise take action against the Purchaser as a result of any Debtor's financial condition, bankruptcy or failure to perform any of such Debtor's obligations thereunder. Upon entry of this Order and the assumption and assignment of the HC Contract, the Purchaser shall be deemed in compliance with all terms and provisions of the HC Contract. Notwithstanding the foregoing, it is not the intent of the Settlement Agreement or the assumption and assignment of the HC Contract hereunder to convey to the Purchaser any claims, causes of action or rights of recovery that the Debtor's estate may have against Harper Collins or any third parties for claims arising out of or related to the HC Contract. The Debtor's estate shall retain all such rights and to the extent necessary the Purchaser conveys and assigns to the Trustee for the benefit of the Debtor's estate any such claims or recoveries and the Trustee shall retain the standing to pursue such claims for the benefit of the estate. The Purchaser agrees to execute any and all necessary documents to effectuate this provision.

13. This Order and the Agreement shall be binding upon, and shall inure to the benefit of, the Trustee, the Debtor, the Debtor's bankruptcy estate and the Purchaser, and their respective successors and assigns, including without limitation, any subsequent trustee hereinafter appointed for the Debtor's estate.

14. This Court shall retain jurisdiction to enforce the provisions of this Order and the Settlement Agreement and to resolve any dispute concerning this Order, the Settlement Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Settlement Agreement and this Order, including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Book Rights, including any challenges thereto, and all issues and disputes arising in connection with the relief authorized herein.

15. Notwithstanding the provisions of Bankruptcy Rules 6004(g) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self executing. In the absence of any entity obtaining a stay of this Order pending appeal, the Trustee and the Purchaser are free to close under the Settlement Agreement in accordance herewith. In the absence of any entity obtaining a stay of this Order pending appeal, if the Trustee and the Purchaser close under the Purchase Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protection of section 363(m) of the Bankruptcy Code as to all aspects of the transactions pursuant to the Settlement Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

16. The sale approved by this Order is not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

17. The Trustee is authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Trustee or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Settlement Agreement and this Order, including without limitation, bills of sale, assignments, releases, certificates, affidavits and similar documents required pursuant to the Settlement Agreement.

18. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtor, any of its officers, directors, shareholders, agents, or representatives, Simpson and any and all creditors of the Debtors or Simpson shall be barred, estopped and enjoined from taking any action of any kind against the Purchaser or the Book Rights to impair or adversely affect the Book Rights or the value thereof, including on account of any claim against the Debtor, Simpson or the Book Rights.

19. The Purchaser is not a successor to the Debtor or its estate by reason of any theory of law or equity and the Purchaser shall not assume or in any way be responsible for any liability or obligation of any of the Debtor and/or its estate (whether direct or indirect, liquidated or unliquidated, choate or inchoate, or contingent or fixed).

20. The failure specifically to include any particular provisions of the Settlement Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Trustee and the Purchaser that the Settlement Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order.

21. From and after eighteen (18) months after the date of this Order, in the event that the Book Rights have not resulted in the payment of any monies to the Debtor's estate, then the Trustee or any creditor may file a motion seeking to obtain a report from the Purchaser as to the

then present status of the exploitation of the Book Rights and the Court shall consider any appropriate relief at such time.

####

Submitted by:
Paul J. Battista, Esq.
Genovese, Joblove & Battista, P.A.
100 S.E. Second Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile (305) 349-2310

Copies Furnished to:
Paul J. Battista, Esq.
(Attorney Battista is directed to serve a copy of this Order upon all parties in interest)

## FIRST AMENDMENT TO SETTLEMENT AGREEMENT

This First Amendment to Settlement Agreement, dated July __, 2007 (this "Amendment"), is by and among Drew Dillworth, in his capacity as the Chapter 7 trustee ("Trustee Dillworth") for the bankruptcy estate (the "Bankruptcy Estate") of Lorraine Brooke Associates, Inc. (the "Debtor") and Fredric Goldman, individually and as the personal representative of the estate of Ronald Lyle Goldman, Deceased ("Goldman").

## RECITALS

A.  On April 13, 2007 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Court"), Case No. 07-12641-BKC-AJC (the "Bankruptcy Case").

B.  On April 18, 2007, Goldman filed a secured claim against the Debtor's estate (the "Bankruptcy Estate") in the amount of $38,250,060.90 (the "Goldman Claim"), which Goldman Claim was amended on June 7, 2007.

C.  On July 2, 2007, Trustee Dillworth and Goldman entered into that certain Settlement Agreement in respect of the Goldman Claim (the "Settlement Agreement").[1]

D.  On July 2, 2007, Trustee Dillworth filed his Motion of Drew Dillworth, the Chapter 7 Trustee (I) to Approve Settlement Between Trustee Dillworth and Fredric Goldman, Motion, and (II) to Shorten Notice Period for Approval of Settlement (the "Motion").

E.  On July 11, 2007, the Court held a hearing on the Motion, at which hearing there was discussion about making certain amendments to the Settlement Agreement to improve the Settlement Agreement for the benefit of the bankruptcy estate.

F.  Subsequent to such hearing, Trustee Dillworth and Goldman conducted further good faith negotiations and have agreed to amend the Settlement Agreement pursuant to the terms hereof.

NOW THEREFORE, in consideration of the terms and conditions contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.  Section 6(ii) and (iii) of the Settlement Agreement are hereby deleted and replaced with the following:

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Settlement Agreement.

(ii) the Purchaser agrees to pay, and Goldman agrees to cause the Purchaser (or have the publisher directly) to pay, the Estate Fee, as hereinafter defined, to Trustee Dillworth for the benefit of the Bankruptcy Estate'

"(iii) Goldman agrees to subordinate the Goldman Allowed Unsecured Claim to the payment in full of all unsecured claims asserted against the Bankruptcy Estate that have been allowed by a final and non-appealable order of the Bankruptcy Court or are not the subject of an objection to claim, provided however that the subordination contained herein shall be limited solely to the distribution of the Estate Fee after payment of a pro rata share of allowed administrative claims from the Estate Fee and shall not apply to the distribution of any other property from the estate."

2. Section 9 of the Settlement Agreement is hereby deleted in its entirety and replaced with the following:

"9. Goldman agrees to assign and transfer to the Trustee and the estate any and all recoveries obtained from any and all claims, causes of action and rights to damages that Goldman has against TMZ Productions, Inc. or any of its affiliates or persons or entities controlling or responsible for the website TMZ.com and/or for the posting of the Book and/or excerpts of the Book on the TMZ.com website (the "TMZ Entities"), including, without limitation, any claims and causes of action for violation of the automatic stay or otherwise, including under section 362(k) of the Bankruptcy Code or otherwise. Goldman also agrees to cooperate with Trustee Dillworth in the evaluation and prosecution of any and all such claims and causes of action against the TMZ Entities. For avoidance of doubt, the settlement contained herein, including the sale of the Book Rights to the Purchaser, shall not adversely affect, discharge, release or extinguish any and all claims, causes of action and/or rights of Trustee Dillworth and Goldman against the TMZ Entities, all such claims, causes of action and rights being specifically reserved herein."

3. Except as specifically amended or modified herein, the Settlement Agreement shall remain in full force and effect.

4. This Amendment may be executed in one or more counterparts and by different parties in separate counterparts. All such counterparts shall constitute one and the same agreement and shall become effective when one or more of the counterparts of this Amendment have been signed by each of the signatories. The parties may execute

this Amendment in any number of actual or telecopied counterparts and by the different parties on separate counterparts, each of which when so executed shall be an original.

5. The parties hereto have had the full opportunity to consult with legal counsel and have reached this Amendment to resolve the matters set forth herein so as to avoid the cost, risk and delay of litigation and agree to enter into this Amendment as evidence of that resolution.

6. This Amendment may only be modified by a written modification signed by each party hereto.

7. The terms and provisions of this Amendment shall be binding on and shall inure to the benefit of the parties hereto and their respective heirs, administrators, executors, personal representatives, successors and permitted assigns.

IN WITNESS WHEREOF, the parties have executed and deliver this Amendment as of the date first written above.

_____
Drew Dillworth, Chapter 7 trustee for
Lorraine Brooke Associates, Inc.

_____
Fredric Goldman, individually and as
the personal representative of the estate of
Ronald Lyle Goldman, Deceased